UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-22482-ALTMAN/REID

SARAH CATHERINE CAPROON,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
Administration,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court upon Plaintiff Sarah Catherine Caproon's Motion for Summary Judgment [ECF No. 14] and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment [ECF No. 16]. For the reasons stated below, the Undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

**BACKGROUND**

Plaintiff appeals the denial of her application for Supplemental Security Income ("SSI"). Plaintiff protectively filed her application for SSI on September 6, 2019, alleging disability beginning June 14, 1998, her date of birth. [ECF No. 12 at 58]. Specifically, Plaintiff alleges she suffers from major depressive disorder, bipolar disorder, eating disorder, learning disorder, congenital heart disease (Noonan's Syndrome), and hypertrophy. [*Id.* at 60]. Plaintiff's claim was

1

initially denied on January 24, 2020, and again on May 4, 2020, following reconsideration. [*Id.* at 58]. Plaintiff subsequently filed a written request for hearing in front of an ALJ. [*Id.*]. On February 3, 2021, a telephonic hearing was held in front of ALJ Lornette Reynolds. [*Id.*]. Plaintiff, her parents, as well Plaintiff's counsel attended the hearing. [*Id.*]. Additionally, Jeffrey Barrett, an impartial vocational expert ("VE"), also attended the hearing. [*Id.*].

Following the hearing, the ALJ issued a decision denying Plaintiff's claims. *See generally* [*Id.* at 55–71]. Specifically, the ALJ concluded that Plaintiff:

    (1) has not engaged in substantial gainful activity since the application date;

    (2) suffers from severe impairments, including "major depressive order/bipolar disorder; eating disorder; learning disorder; congenital heart disease (Newman's Syndrome); and hypertrophic;"

    (3) does not have an impairment or combination of impairments which meet or medically equal those listed on 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926);

    (4) has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), albeit with certain restrictions;

    (5) has no past relevant work;

    (6) was born on June 14, 1998 and was 21 years old, which is defined as a younger individual age 18–44, on the date the application was filed (20 CFR 416.963);

    (7) has at least a high school education (20 CFR 416.964);

    (8) transferability of job skills is not an issue because Plaintiff does not have past relevant work;

    (9) age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.969 and 416.969(a)); and

    (10) has not been under a disability, as defined in the Social Security Act, since September 6, 2019, the date the application was filed (20 CFR 416.920(g)).

[*Id.*]. A review of the ALJ's decision was requested and denied by the Appeals Council. [*Id.* at 9–12]. Thereafter, Plaintiff sought judicial relief and initiated the instant action. Plaintiff contends that: (1) substantial evidence does not support the ALJ's unfavorable decision because the ALJ did not properly evaluate the various medical opinions and records; and (2) the ALJ did not adequately evaluate Plaintiff's subjective complaints. *See generally* [ECF Nos. 1; 14].

## RELEVANT MEDICAL EVIDENCE

**(1) Treating Cardiologist – Todd Roth, M.D.**

Plaintiff's treatment history with Dr. Roth consists of visits "every [three] months since March [of] 2020." [ECF No. 12 at 29]. During Plaintiff's September 22, 2020, evaluation, Dr. Roth noted Plaintiff has hypertrophic cardiomyopathy, and while positive for dyspnea, she was negative for "chest pain, cyanosis, irregular heartbeat, near-syncope, palpitations … shortness of breath and sleep disturbances due to breathing." [*Id.* at 26]. Additionally, Dr. Roth found Plaintiff did not have "difficulty with concentration, dizziness, headaches … [and] appears well-developed and well-nourished." [*Id.*]. On April 30, 2021, Dr. Roth completed a Physical Medical Source Statement on Plaintiff's behalf. [*Id.* at 29–32]. In this statement, Dr. Roth indicated that because of her underlying health conditions, the prognosis of which he labeled as "poor," Plaintiff would be severely limited in her ability to work. [*Id.*]. Namely, that Plaintiff would require "1–3" 15-minute breaks throughout a day, be "off task" 25% or more during a typical workday, and on average would be absent from work more than four days in a month. [*Id.* 31–32]. Further, Dr. Roth opined that Plaintiff is incapable of tolerating even "low stress" work, because "stress may cause [a] cardiac event." [*Id.* at 32]. Consequently, Dr. Roth concluded Plaintiff "should avoid stress and should not work or attend school fulltime." [*Id.*].

**(2) David Tobolowsky, MD**

Plaintiff was observed by Dr. Tobolowsky on September 17, 2019. During the session Dr. Tobolowsky noted Plaintiff developed depression during middle school, and also began experiencing sleep disorder, food restriction (anorexia), and body image distortion. [*Id.* at 776]. Plaintiff's psychiatric treatment history was explained, including Plaintiff's past failure to take prescribed medication or intentionally taking more than the prescribed amount. [*Id.*]. Dr. Tobolowsky posited that at the time of the observation Plaintiff had "stopped overdosing and self-harm[,] but hasn't recovered from the eating disorder. She vomits at most monthly." [*Id.*]. Dr. Tobolowsky further noted Plaintiff had "good hygiene and grooming," maintained "normal eye contact," her affect was "[m]ildly giggly, appropriate," and that she exhibited coherent and logical thought process. [*Id.* at 777]. Ultimately, Dr. Tobolowsky concluded Plaintiff had bipolar disorder, which was in partial remission, bulimia nervosa, as well as dog and hospital gown phobia. [*Id.*]. Dr. Tobolowsky recommended Plaintiff (1) walk 150 minutes a week; (2) change her dietary plan; (3) start a regular bed time and wake time; (4) take vitamin D3; (5) increase lamotrigine to 50 mg at night for two weeks; and (6) then increase lamotrigine to 100 mg at night. [*Id.* at 778]. Lastly, on November 12, 2019, Dr. Tobolowsky provided a letter recommending Plaintiff not take a full course load until her condition "stabilized." [*Id.* at 812].

**(3) George Butler, Psy.D.**

Dr. Butler, upon referral from the Vocational Rehabilitation Office, conducted a psychological evaluation of Plaintiff. [*Id.* at 600]. At the onset of the evaluation, Dr. Butler noted Plaintiff suffers from bipolar disorder, the symptoms of which she continues to experience. [*Id.* at 601]. Additionally, it was noted that Plaintiff still experiences symptoms of anorexia nervosa but had "not displayed full Anorexia symptoms in over a year." [*Id.*]. Given these issues, Plaintiff has

attended psychotherapy "off and on" throughout her life and has been on various medication to help her cope. [*Id.* at 601–02].

Plaintiff was administered the WAIS-IV Intelligence Quotient ("IQ") test. Based on the results of the IQ test, Dr. Butler concluded Plaintiff's cognitive ability was considered "low average." [*Id.* at 603]. Given the results of the test, as well as that of Plaintiff's academic capabilities, Dr. Butler surmised that the "[r]esults from this evaluation designate that [Plaintiff's] IQ falls in the *Below Average* range … [and along with her academic capabilities, this] cause[s] significant interference with academic and occupational performance, and with activities of daily living." [*Id.* at 607]. As such, Dr. Butler posited that in his opinion Plaintiff "has significant impairments that are likely to impede her ability to achieve her vocational goals." [*Id.* at 612]. Notwithstanding, Dr. Butler concluded if Plaintiff continues to receive and adhere to "appropriate medical care" she may be able to find a job in the "communications" or "service professional" fields, which includes Plaintiff's stated interest of pursuing work as an "art therapist." [*Id.* at 607–09, 612].

**(4) Dr. Linda Keller, M.D.**

On September 14, 2019, Dr. Linda Keller produced a letter detailing her medical opinion regarding Plaintiff's condition. [*Id.* at 686]. Dr. Keller, who noted Plaintiff had been a patient of her practice since birth, opined that Plaintiff's "most notable area of concern is her heart, resulting in marked and severe functional limitations." [*Id.*]. Specifically, Dr. Keller asserted that Plaintiff's "cardiomyopathy has worsened throughout her life despite aggressive medication management, putting her at risk of life threatening arrythmias." [*Id.*]. Given Plaintiff's physical condition, Dr. Keller averred Plaintiff "remains with marked and severe functional limitations of her ability to work and exert herself physically." [*Id.*].

Notwithstanding her conclusions regarding Plaintiff's physical limitations, Dr. Keller provided that Plaintiff "has no intellectual limitations, and has been able to maintain her studies." [*Id.*]. As such, Dr. Keller noted Plaintiff's "functional limitations are mainly related to decreased cardiac output … [and Plaintiff] is able to sit, stand and walk short distances if well hydrated [,] but stooping, crouching, climbing stairs, lifting objects, and exerting herself physically results in symptoms of pallor, shortness of breath and possible arrhythmia." [*Id.*].

### (5) State Agency Consultants – Dr. Frances Martinez, Dr. Pamela Green, Dr. Guttman, and Dr. O'Shea

(a) <u>Dr. Pamela Green and Dr. Frances Martinez – State Psychological Consultants</u>

Following a review of Plaintiff's medial and psychological records and history, state psychological consultants Dr. Pamela Green and Dr. Frances Martinez both concluded Plaintiff does not meet the disability standards to qualify for SSI. Dr. Green, who conducted the initial evaluation, concluded Plaintiff had moderate limitations in her ability to (1) understand, remember, or apply information; (2) interact with others; and (3) concentrate, persist, or maintain pace. [*Id.* at 133]. Plaintiff's limitation to "adapt or manage oneself" was listed as only mildly impaired. [*Id.*]. Although Dr. Green noted Plaintiff's disability claims had "reasonable/partial consistency" with the record evidence, she concluded Plaintiff's "current symptoms are not listing level." [*Id.* at 134].

Dr. Frances, who evaluated Plaintiff's reconsideration application, affirmed Dr. Green's initial determination that Plaintiff does not qualify for SSI. While acknowledging Plaintiff's limitations caused by her medical and psychological condition, Dr. Frances concluded Plaintiff "can perform simple and moderately complex tasks in a routine setting with modest social demands." [*Id.* at 160].

(b) <u>Dr. David Guttman and Dr. Kathy O'Shea – State Medical Consultants</u>

Dr. David Guttman, who conducted the initial medical evaluation, noted given Plaintiff's numerous medical impairments, she has certain exertional limitations impacting her residual functional capacity to work. [*Id.* at 135]. These limitations include Plaintiff's inability to lift more than ten pounds, to sit more than six hours in an eight hour workday, or climb ladders or scaffolds. [*Id.* at 135–36]. Based on Plaintiff's limitations Dr. Guttman asserted she should be restricted to sedentary work. [*Id.* at 139]. As such, Dr. Guttman concluded Plaintiff does not have a disability that "meet[s] or equal[s] any listings," but still noted her "allegations are considered credible and consistent" with the available medical records. [*Id.* at 137].

Dr. O'Shea evaluated the reconsideration application, and affirmed the decisions made in the initial evaluation. Specifically, Dr. O'Shea found that "[t]here is no evidence to support that there has been any significant change in [Plaintiff's] physical condition since [the] initial evaluation … [and Plaintiffs] report of worsening symptoms … is inconsistent with the newly submitted" medical records. [*Id.* at 158]. In affirming the initial determination that Plaintiff is "not disabled," Dr. O'Shea reiterated Plaintiff is limited to sedentary work, but nonetheless was capable of sustained work. [*Id.* at 160–61].

## HEARING TESTIMONY

At the telephonic hearing held on February 4, 2021, Plaintiff's counsel indicated they were asserting entitlement to SSI based on Plaintiff having a number of listed impairments including hypertrophic cardiomyopathy, ischemic heart failure or recurrent arrythmias, symptomatic congenital heart disease, Noonan's syndrome, fibromyalgia, esotropia, myopia, stigmatism, sleep disorder, endocrine disorder, thyroid disorder, bipolar disorder, depressive disorder, general anxiety disorder, and learning disorder. [ECF No. 12 at 89–90]. During her testimony, Plaintiff

7

provided she had received her general equivalent diploma as well as an associate's degree in sociology from Miami Dade College in 2020. [*Id.* at 91]. Plaintiff, noted, however, it took her four years to receive the associate's degree, and that Miami Dade College provided her with "several accommodations" including altering the required curriculum for her. [*Id.*]. At the time of the hearing Plaintiff was "doing the other two years of undergraduate at [F]IU" where she was continuing to study sociology. [*Id.* at 94].

As to her health, Plaintiff asserted she takes numerous medications to treat her hypertrophic cardiomyopathy, thyroid disease, fibromyalgia, and bipolar disorder. [*Id.* at 92]. Plaintiff admitted these medications "help a lot." [*Id.*]. Notwithstanding, Plaintiff argued she is unable to work, and is thus entitled to SSI, because she "can't even get through a full day without needing rest … [and she] rest[s] anywhere from one hour to eight hours during the day, due to fatigue." [*Id.*]. Despite her medications helping her, Plaintiff asserted that the large doses of beta blocker and psychotropic medications she is prescribed contribute to her fatigue and make her "even more tired." [*Id.* at 99]. Further, Plaintiff contended she is unable to work because her fatigue limitations are coupled with physician-imposed work restrictions. [*Id.* at 93]. Specifically, Plaintiff averred her physicians informed her she "cannot be under any, any stress, physical or emotional … [she] cannot overexert [herself] physically … [and her physicians] made several accommodations for [her] not to have to attend school full-time, or to exempt [her] from things that wouldn't be good for [her] health." [*Id.*]. Despite these limitations Plaintiff, who resides with her parents, asserted she can bathe and dress herself, and although reliant on her family to "supply [her] food," she is able to feed herself. [*Id.* at 95]. Despite her ability to physically feed herself, Plaintiff asserted she has "anxiety" around food because of her eating disorder, and even when "mentally well" struggles to eat "and often need[s] a lot of support and encouragement to eat." [*Id.*

8

at 98]. Similarly, although Plaintiff can dress and bathe herself, she contends at times she still has "vapo depressor episodes" while in the shower, during which she "cannot stand very long," and so family members remain close by while she showers in case she faints. [*Id.* at 99].

Regarding her daily schedule, Plaintiff stated she will rest, do schoolwork, read, sit outside, attempt to eat, and speak with friends on the internet. [*Id.* at 101]. Additionally, Plaintiff contends she requires monthly doctors appointment, which she goes to "three to four times a month, sometimes more, due to testing." [*Id.*].

Testimony by Vocational Expert Jeffrey Barrett

Prior to the hearing, Mr. Barrett had reviewed the vocational evidence in the record and heard Plaintiff's testimony. [*Id.* at 106]. Mr. Barrett noted Plaintiff had no prior work history. Based on Mr. Barrett's review of the vocational evidence in the record and Plaintiff's testimony, as well as consideration of her impairments, he concluded there were jobs in the national economy Plaintiff would be able to engage in. These included "microfilming;" "addresser;" and "cutter and paster." [*Id.* at 107–108]. All these occupations involve sedentary work and are within Plaintiff's "reasoning level."

When asked by Plaintiff's counsel "if a hypothetical claimant would be unable to be around the public" or coworkers would they be able to do the jobs Mr. Barrett designated, Mr. Barrett acknowledged such a special accommodation would not be something an ordinary employer would do. [*Id.* at 108–109]. Similarly, regarding a hypothetical claimant who "would be off-task at least 25 percent of their day," Mr. Barrett asserted an employer would find that to be "excessive" and "would be preclusive of any employment." [*Id.* at 109]. Mr. Barrett opined the same would be true of a claimant who would routinely miss at least three to four days of work per month, or one who could not type consistently. [*Id.* at 110].

## **RELEVANT LAW**

<u>Standard of Review</u>

Federal courts reviewing a social security appeal are to employ "a deferential reconsideration of the findings of fact and [an] exacting examination of the conclusions of law." *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011). This inquiry is governed by the "substantial evidence" standard which provides the

> Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the review finds that the evidence preponderates against the Commissioner's decision.

*Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted). The Supreme Court of the United States has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Importantly, the reviewing court is prohibited from reweighing evidence already considered by the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Despite this deferential standard, the Commissioner's conclusions of law, done through the ALJ, are not afforded the same presumption of validity. *Williams*, 416 F. App'x at 862. Rather, the Commissioner's legal conclusions are reviewed *de novo*. *See Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018).

<u>Regulatory Framework</u>

The Social Security Regulations provide a five-step "sequential" evaluation process to be used by an ALJ to determine whether a claimant has established they are disabled. If at any step

of the sequential evaluation the ALJ determines a claimant is or is not disabled, the ALJ concludes the inquiry and does not evaluate the next step. 20 C.F.R. § 416.920(a)(4).

The first step requires the ALJ to determine whether the claimant is engaged in "substantial gainful activity" ("SGA"). If the claimant is engaged in SGA then he or she is not deemed disabled and the ALJ's inquiry ends. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Step two requires the ALJ to evaluate whether a claimant's alleged impairments are "medically severe." If the claimant's impairments are found to be medically severe the ALJ is to proceed to step three. *Id.* at 1237. In the third step, the ALJ must decide if any of the claimant's proffered impairments, individually or in combination, "meet or equal" any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 1238. If so, the ALJ proceeds to the fourth step.

Step four requires the ALJ to undertake a two-part analysis. First, the ALJ must assess what the claimant's "residual functional capacity" ("RFC") is. Second, based on claimant's RFC, the ALJ must determine whether claimant can return to any "past relevant work." Lastly, the fifth step, in which the claimant no longer bears the burden, requires the ALJ to determine whether, given a claimant's age, education, work experience, and RFC, the claimant can perform any work. Essentially, during this step the

> ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.

*Philips*, 357 F.3d at 1239.

## **DISCUSSION**

Plaintiff asserts the ALJ erred on two grounds. First, that the ALJ failed to sufficiently evaluate Plaintiff's medical records and claims. Second, that the ALJ improperly discounted

Plaintiff's subjective complaints. Plaintiff has failed to establish that any such errors provide a basis to overturn the ALJ's unfavorable decision. We address each contention in turn.

### I. The ALJ's Decision is Supported by Substantial Evidence

In evaluating the five-part regulatory framework, the ALJ concluded Plaintiff satisfied the first two steps as Plaintiff had not engaged in SGA since September 6, 2019, and Plaintiff suffered from severe impairments "which significantly limit the ability to perform basic work activities." [ECF No. 12 at 52]. At step three, however, the ALJ concluded Plaintiff's impairments, individually or in combination, do not "meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that [Plaintiff's] impairments medically equal a listed impairment." [*Id.* at 60]. Specifically, the ALJ determined Plaintiff's heart disease, as well as her mental impairments, do not prevent Plaintiff from engaging in activities of daily living, rather "the evidence of record supports the fact that she functions quite independently." [*Id.* at 63]. There is substantial evidence in the record to support this conclusion. The ALJ noted that although Plaintiff has numerous mild or moderate limitations, she is able to dress herself, bathe herself, care for herself, and feed herself (although she may require assistance in preparing "hot meals"). [*Id.* at 62, 321–22]. Further, Plaintiff was found to be able to use forms of public transportation, be driven in an automobile, pay her bills, and count change. [*Id.*]. These abilities, combined with Plaintiff's part-time attendance at Florida International University[1] served, in part, to support the ALJ's conclusion that Plaintiff did not meet the step three criteria. This information, as well as other record evidence, is significantly substantial to affirm the ALJ's decision.

---

[1] The ALJ put forth in her opinion that Plaintiff attends Florida International University full-time. This error, however, is insufficient to deem the ALJ's opinion to be unsupported by substantial evidence.

Similarly, at step four, the ALJ's determination that Plaintiff has the RFC to perform sedentary work is supported by substantial record evidence. The ALJ concluded that although "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms … [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record." [*Id.* at 64]. The ALJ conducted a thorough review of Plaintiff's medical history for the applicable timeframe. She noted that given the results of medical testing Plaintiff received between 2018 and 2020, Plaintiff's "physical impairments, while limiting, are not disabling within the meaning of the regulations." [*Id.* at 66]. Although Plaintiff at times endorsed "occasional palpitations … they only occurred a few times per month and were self-limiting." [*Id.*] Moreover, Plaintiff appeared to be tolerating her medications well, including her beta blocker which "had improved her palpitations." [*Id.*]. Based on the foregoing the ALJ concluded the "medical evidence of record indicates the [Plaintiff] received routine treatment for her impairments, which generally responded to treatment." [*Id.* at 67].

The same held true for Plaintiff's alleged "disabling mental impairments." Although the ALJ acknowledged Plaintiff suffered from major depressive disorder, bipolar disorder, eating disorders, and learning disorders, she noted Plaintiff exhibited progress and increased functionality throughout her psychological treatment between 2018 and 2019. [*Id.* at 64–66]. In various psychological treatment notes with different providers during this time Plaintiff indicated she had been doing "fairly well despite her struggles," that she was doing well in her college courses, was feeling "better than I was," and felt "OK … [and] more even" on her new medication Lamotrigine. [*Id.*]. This is not to say the medical record shows Plaintiff did not struggle with her mental health.

Rather, it shows there is sufficient and substantial record evidence to support the ALJ's conclusion that Plaintiff's mental health impairments did not rise to the level of disabling impairments.

Following the review of Plaintiff's medical history for the applicable period, the ALJ assigned weight to the opinions given by the various medical providers. The ALJ noted she found the opinions of the state agency medical and psychological consultants to be persuasive and consistent with the record evidence. Specifically, the ALJ found the opinions of Dr. Green, Dr. Martinez, Dr. O'Shea, and Dr. Guttman to be consistent with the record evidence. [*Id.* at 67–68]. Similarly, the ALJ found the state agency medical providers' opinions to have sufficient supportability because these evaluations looked at the entire scope of Plaintiff's pertinent medical history. [*Id.*]; *see* 20 C.F.R. § 416.920c(a) (2017) (noting that supportability and consistency serve as the predominant factors in evaluating medical opinions).

Similarly, the ALJ's conclusion that Dr. Roth's opinion was unpersuasive is supported by substantial evidence. The ALJ concluded, based on her review of the record, that Dr. Roth's opinion was inconsistent with the record evidence. *See, e.g.,* [ECF No. 12 at 68] (noting Dr. Roth's opinion that Plaintiff could not even perform sedentary work was inconsistent with other record evidence indicating Plaintiff was responding well to her medication and had "good exercise tolerance and reported a mile after a period of inactivity, and felt "ok"). As the ALJ's analysis of Dr. Roth's opinion, and the weight assigned to it, is supported by substantial record evidence, it is not for this Court to reweigh the evidence. This is true despite the fact Dr. Roth is Plaintiff's treating physician. *See* 20 C.F.R. § 416.920c(a) (2017) (noting the agency chose not to retain the "treating source rule" and instead the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's own] medical sources."). The ALJ also put forth similarly

sufficient rationale in concluding the opinions of Dr. Keller, Dr. Parul Jayakar, and Dr. Tobolowsky, were only partially persuasive because each failed to quantify Plaintiff's functional limitations, and were at least partially inconsistent with one another. [ECF No. 12 at 68–69].

Thus, based on the ALJ's review of the record, the hearing, and in particular the testimony of the VE, there is substantial evidence in the record supporting the ALJ's conclusion that there are jobs in the national economy which Plaintiff would be qualified and able to perform. Given the highly deferential substantial evidence standard, and prohibition for this Court to reweigh the record evidence, the ALJ's decision should be affirmed.

## II. The ALJ Gave Sufficient Consideration to Plaintiff's Subjective Complaints

Plaintiff's contention that the ALJ failed to give sufficient weight and consideration to her subjective complaints is without merit. The ALJ's conclusion that Plaintiff's subjective complaints "are not entirely consistent with or supported by the [] evidence of record," is supported by substantial evidence and should therefore be affirmed. [*Id.* at 67].

Courts apply a "three-part standard when a claimant seeks to establish disability through [their] own testimony regarding pain or other subjective symptoms." *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011). That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id. (*quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Where a "claimant testifies as to his [or her] subjective complaints of disabling pain and other symptoms … the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation and

citation omitted). Although a credibility determination is not explicitly required, the implication must be sufficiently clear to the reviewing court and "cannot merely be a broad rejection which is not enough to enable [the court] to conclude that [the ALJ] considered [a claimant's] medical condition as a whole." *Id.* (internal quotation and citation omitted).

Here, the ALJ acknowledged that Plaintiff has underlying medical conditions. Notwithstanding, the ALJ concluded that the objective medical evidence did not confirm the severity of Plaintiff's alleged disabling pain, or that the objective evidence was such that it is reasonably expected to give rise to the alleged pain. In arriving at this conclusion, the ALJ did not merely provide a broad rejection of Plaintiff's subjective complaints. Instead, the ALJ underwent a meticulous review of the record in support of the assertion that Plaintiff's "statements concerning the intensity, persistence and limiting effect of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." [*Id.* at 64]. The ALJ compared and contrasted various medical records, physician opinions, Plaintiff's hearing testimony, and other record evidence such as Plaintiff's academic record. Whether this Court would have arrived at a different conclusion based on the record evidence is immaterial to whether the ALJ erred. The ultimate question in making this determination "is not … whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The Undersigned finds no basis for such clear error.

## **CONCLUSION**

Because ALJ Reynolds' decision is supported by substantial evidence and is based on proper legal standards, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment

[ECF No. 14] be **DENIED**, the Commissioner's Motion for Summary Judgment [ECF No. 16] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 27th day of May, 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **United States District Judge Roy K. Altman;**

       **All Counsel of Record**